UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| WALTER MOORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:25-cv-00019-JAW |
| | ) |
| OFFICER CONDE, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER AFFIRMING RECOMMENDED DECISION OVER OBJECTION**

A federal magistrate judge recommends the dismissal of a complaint brought by an incarcerated individual against various employees of the Maine Department of Corrections, seeking redress for the defendants' confiscation of his property while incarcerated. Having performed a de novo review, the federal district court affirms the magistrate judge's recommended decision over the plaintiff's objection.

**I.    BACKGROUND**

On January 21, 2025, Walter Moore,[1] who is currently incarcerated at the Maine State Prison in Warren, Maine, brought a civil complaint against individuals

---

[1]    The complaint and its attachment identify the Plaintiff variously as Walter Moore, Nikki Moore, and Nikki Natasha Petrovickov. *Compl. for Violation of Civ. Rights* (ECF No. 1) (*Compl.*); *id.*, Attach. 1, *Attach.* The Court is unsure of which name the Plaintiff prefers and of the Plaintiff's preferred pronouns. Although the Plaintiff describes hormonal treatment and surgery for "male be female," *Attach.* at 7, writes "me transgender A.K.A. Walter Moore—real name Nikki Natasha Petrovickov," *id.*, and, in a complaint in a separate action, requested prison officials "acknowledge my condition and [] treat me respectfull[y] for and as the woman I am," *Walter William Moore v. Maine Dep't of Corr.*, et al., No. 1:16-cv-00398-NT, *Form to Be Used by a Prisoner in Filing a Compl. Under The Civ. Rights Act* at 3 (ECF No. 1), the Plaintiff elected to proceed in this action as Walter Moore and does not tell the Court of an alternatively preferred name or of the Plaintiff's preferred pronouns. For purposes of this order, the Court follows the Plaintiff's lead and refers to the Plaintiff as Walter Moore and uses he/him/his pronouns. If the Plaintiff prefers different pronouns, the Plaintiff may inform the Court.

identified as Officer Conde,[2] Commissioner/Warden Randall Liberty, Warden Nathan Thayer, Deputy Warden Robert Walden, Jail Administrative Officer Scott Harvey, Deputy Commissioner David Simpson, Deputy Commissioner David Porter, Warden Jeff Merril, Warden Matthew Magnusson, Deputy Warden Bob Costigan, Deputy Warden Tory Ross, Commissioner Joseph Ponte, Commissioner Joseph Fitzpatrick, Deputy Commissioner Anthony Cantillo, Officer Avill, Officer Ruffner, Officer Richardson, Officer Touchett, Officer Court, Officer Cartlidge, Officer Royer, Officer Malcolm, Officer Wendell Atkinson, and Captain Theriault (collectively, the Defendants), all in both their individual and official capacities. *Compl. for Violation of Civ. Rights* (ECF No. 1) (*Compl.*). The Plaintiff alleges, among other things, that the Defendants stole and destroyed his personal property during his term of incarceration. *Id.* at 4-5; *see also id.*, Attach. 1, *Attach*. He seeks "full recovery all brand new items to replace all personal property stolen and destroyed," the value of which he estimates at $60,435.25, a six-year sentence reduction, and damages to compensate him for pain and suffering. *Compl.* at 5.

Mr. Moore moved to proceed in forma pauperis on February 21, 2025, *Appl. to Proceed in Dist. Ct. Without Prepaying Fees or Costs* (ECF No. 8), and the United States Magistrate Judge granted his motion on February 24, 2025. *Order Granting Mot. to Proceed Without Prepayment of Fees and Costs* (ECF No. 10). Pursuant to 28 U.S.C. § 1915(e)(2), the statute that governs matters filed without the prepayment of

---

[2] The complaint does not supply Officer Conde's first name. *See Compl.*

fees, courts are authorized to conduct a preliminary review of a complaint when a plaintiff proceeds in forma pauperis. 28 U.S.C. § 1915(e)(2).

On April 15, 2025, after performing such a preliminary review pursuant to 28 U.S.C. § 1915(e)(2), the Magistrate Judge recommended the Court dismiss the complaint. *Recommended Decision After Rev. of Pl.'s Compl.* (ECF No. 15) (*Rec. Dec.*). The Magistrate Judge further reviewed the complaint pursuant to 28 U.S.C. § 1915A, which instructs a court to review a civil complaint in which a prisoner seeks redress from a governmental entity "as soon as practicable after docketing." 28 U.S.C. § 1915A. Because a Magistrate Judge reviewed Mr. Moore's complaint under 28 U.S.C. § 636(b)(1)(B), Mr. Moore had a right to de novo review by the district judge upon filing an objection within fourteen days of being served. *See* 28 U.S.C. § 636(b)(1)(C). Mr. Moore filed his objection on May 1, 2025.[3] *Mot. of Obj. On the Grounds of Failure to Follow S.O.P. by Defs. and MSP* (ECF No. 16) (*Pl.'s Obj.*).

## II. THE PARTIES' POSITIONS

### A. The Magistrate Judge's Recommended Decision

The Magistrate Judge recommends the Court dismiss Mr. Moore's complaint. *Rec. Dec.* at 1. "Construing Plaintiff's allegations liberally," the Magistrate Judge says, "the essence of Plaintiff's complaint is that corrections officers confiscated and

---

[3] Although Mr. Moore's objection was technically due by April 29, 2025, the Court in its discretion is treating his objection as timely filed, following the First Circuit's instruction to district courts reviewing pro se pleadings to construe these submissions liberally, *see Sanchez v. Brown Univ.*, No. 23-1983, 2024 U.S. App. LEXIS 15530, at *1 (1st Cir. 2024) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and the First Circuit's inclination to "dispos[e] of claims on the merits rather than on the basis of technicalities." *Kuehl v. FDIC*, 8 F.3d 905, 908 (1st Cir. 1994).

destroyed or refused to return multiple items of Plaintiff's personal property." *Id.* at 3. Considering the legal claims available to the Plaintiff, the Magistrate Judge observes that "[b]ecause of the inherent challenges of prison administration, and because criminal punishment justifies restrictions on many civil rights, prisoners have no reasonable expectation of privacy and thus no Fourth Amendment 'right to privacy in [their] cell[s] nor protection against unreasonable seizures of their personal effects," and federal constitutional claims involving prisoners' personal property are generally raised as due process arguments pursuant to the Fifth and Fourteenth Amendments. *Id.* (quoting *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 65 (1992)).

After considering both procedural and substantive due process, the Magistrate Judge determines neither of these constitutional protections provides the Plaintiff with a plausible pathway to relief. *Id.* at 4-5. While procedural due process "normally requires notice and an opportunity for some kind of hearing," *id.* at 4 (quoting *Herwins v. City of Revere*, 163 F.3d 15, 18 (1st Cir. 1998)), the Magistrate Judge says, "where, as here, a prisoner alleges the unauthorized deprivation of property, the Due Process Clause is only violated if the state does not afford meaningful post-deprivation remedies." *Id.* (citing *Hudson v. Palmer*, 486 U.S. 517, 532-33 (1984) ("[W]here a loss of property is occasioned by a random, unauthorized act by a state employee, rather than by an established state procedure . . . it is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place"); *Parratt v. Taylor*, 451 U.S. 527, 543 (1981) (affirming dismissal of due process claim where "the deprivation occurred as a result of the unauthorized failure of

4

agents of the State to follow established state procedure" related to the receipt of prisoner packages by mail); *Watson v. Caton*, 984 F.2d 537, 541 (1st Cir. 1993) (affirming dismissal of due process claim based on defendant's alleged destruction of "non-allowable" property that arrived at prison by mail, without providing prisoner notice and an opportunity to mail the property elsewhere)). Pursuant to the *Parratt-Hudson* doctrine, the Magistrate Judge reports,

> [s]o long as a state has not set up a scheme so open-ended it invites unwarranted uses of summary process, see *Zinermon [v. Burch]*, 494 U.S. [113,] 138 [(1990)], and so long as a state provides an adequate after-the-fact remedy for any wrongful summary action, see *Parratt*, 451 U.S. at 543-44, allegations of the kind of "random and unauthorized" mistakes in application that those who work in government sometimes make are not enough to state a procedural due process claim, *Hudson*, 468 U.S. at 533.

*Id.* at 5 (quoting *S. Commons Condo. Ass'n v. Charlie Arment Trucking, Inc.*, 775 F.3d 82, 89 (1st Cir. 2014)).

Applying this precedent to the instant case, the Magistrate Judge determines Mr. Moore has not alleged facts that would support a procedural due process claim because he "does not challenge the procedures provided by the [s]tate of Maine and Plaintiff does not allege the absence of state remedies." *Id.* Moreover, even if Mr. Moore had brought such a challenge, the Magistrate Judge determines he "would likely have no grounds on which to assert inadequate post-deprivation remedies," because the Maine Law Court has recognized that prisoners may appeal administrative rulings made by the Maine Department of Corrections on prisoner grievances to the state courts, and the Maine Tort Claims Act (MTCA) holds governmental entities liable for property losses arising from the operation or

maintenance of any public building. *Id.* at 5 n.2 (citing *Fleming v. Comm'r Dep't of Corr.*, 2002 ME 74, ¶ 9, 795 A.2d 692) (Maine Rule of Civil Procedure 80C(i) allows not only a review of final agency action, but also an independent claim for damages where appropriate); 14 M.R.S. § 8104-A(2)).  The Magistrate Judge thus opines that "Maine law affords an individual an adequate remedy for the negligent or intentional destruction of personal property in the form of a common law conversion claim." *Id.* (citing *Withers v. Hackett*, 1998 ME 164, ¶ 7, 714 A.2d 798).

Turning to substantive due process, the Magistrate Judge recommends the Court conclude Mr. Moore has alleged insufficient facts to ground such a claim. *Id.* at 5-6.  "The substantive component of the Due Process Clause is violated by executive action when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense," the Magistrate Judge reports, advising that Mr. Moore's allegations regarding property confiscation do not satisfy this high burden. *Id.* at 6 (quoting *Espinoza v. Sabol*, 558 F.3d 83, 87 (1st Cir. 2009) (quotation omitted); *accord Pagan v. Calderon*, 448 F.3d 16, 32 (1st Cir. 2006) (conduct must be "extreme and egregious," "truly outrageous, uncivilized, and intolerable," "stunning")).

Finally, acknowledging Mr. Moore also alleges other instances "involv[ing] the conduct and rights of third parties," the Magistrate Judge recommends the Court conclude these other allegations fail to state a plausible claim entitling the Plaintiff to relief. *Id.* at 6 n.3.

### B.    Walter Moore's Objection

Mr. Moore objects to the Recommended Decision, averring that "[a]t no time upon the illegal taking of any of Plaintiff Moore's personal property did any involved Defendant, M.S.P. Staff member and/or the Property Officer[] provide the Plaintiff with a Property Release of Disbursement Form," which he contends "is the official and proper [Standard Operating Procedure (SOP)] process that all county jails and correctional facilities in the state of Maine under Title 34-A are to follow." *Pl.'s Obj.* at 1.  He contends the Defendants' actions not only violated the Maine Department of Corrections' own policy guidelines, but also constitutes theft, asking the Court "to review Title 34-A S.O.P., the process of release or destroy personal property." *Id.* at 2.

### III.    LEGAL STANDARD

In reviewing a Magistrate Judge's recommended decision on a party's objection, a court "shall make a de novo determination of those portions of the . . . recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* 28 U.S.C. § 636(b)(1)(B).  At the same time, the Court is "only obliged to perform de novo review of disputed portions of the report and recommendation." *United States v. J.C.D.*, 861 F.3d 1, 6 (1st Cir. 2017).  Under this standard, the Court reviews factual findings for clear error, *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999), and gives plenary review to pure questions of law.  *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010).

## IV.   DISCUSSION

The Court reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record.  Having made a de novo determination of "disputed portions of the report and recommendation," the Court affirms the Recommended Decision of the Magistrate Judge over the Plaintiff's objection and determines that no further proceedings are necessary.  *See J.C.D.*, 861 F.3d at 6.

Mr. Moore does not clearly identify the legal authority pursuant to which he brings his claims, and the Magistrate Judge, in his discretion, liberally construed the Plaintiff's complaint as pleading violations of the Fourth and Fourteenth Amendments.  The Court reviews each of these potential legal bases in turn.

### A.   Fourth Amendment Claim

First, the Magistrate Judge correctly reports that the Supreme Court has determined incarcerated individuals do not have a reasonable expectation of privacy "in [their] cell[s] nor protection against unreasonable seizures of their personal effects," and thus, any Fourth Amendment claim advanced by Mr. Moore based on the Defendants' alleged seizure of his personal effects during his period of incarceration is unavailing.  *Rec. Dec.* at 3 (quoting *Soldal*, 506 U.S. at 65).  Insofar as Mr. Moore intended to bring a Fourth Amendment claim, the Court affirms the Recommended Decision's determination that the Fourth Amendment does not provide Mr. Moore a plausible pathway to relief.

### B. Fourteenth Amendment Claims

#### 1. Procedural Due Process

Second, the Court affirms the Magistrate Judge's determination that Mr. Moore does not have a colorable procedural due process claim because he neither challenges the procedures provided by the State nor alleges the absence of State remedies. *Id.* at 5. Rather, as the Magistrate Judge correctly observes, Mr. Moore asserts that on January 19, 2018, January 31, 2019, and August 23, 2019, prison officials, including Officer Avill and Officer Court, took and/or destroyed his property, and on November 19, 2021, Officer Malcolm and Sergeant Richardson entered his cell and took items without providing him with a contraband disposition form. *Rec. Dec.* at 2. The crux of Mr. Moore's objection to the Recommended Decision appears to be that the Maine Department of Corrections has a procedure in place for officials to dispose of incarcerated individuals' property which these officers failed to follow in confiscating his personal effects. *See Pl.'s Obj.* at 1 ("At no time upon the illegal taking of any of Plaintiff Moore's personal property did any involved Defendant, M.S.P. Staff member and/or the Property Officer[] provide the Plaintiff with a Property Release of Disbursement Form. This is the official and proper [Standard Operating Procedure (SOP)] process that all county jails and correctional facilities in the state of Maine under Title 34-A are to follow"); *see also Attach.* at 6 ("It's now coming upon six (6) years that the plaintiff has been exhausting the Grievance Process as remedy, simply to be denied and or dismissed"). The Court understands Mr. Moore's procedural due process argument not to be that the Maine Department

9

of Corrections lacks adequate procedure, but that individual officers, some named as Defendants in this case, did not abide by that process here.

Mr. Moore does not provide the Court with the relevant authority governing the confiscation or storage of inmate property; however, of its own accord, the Court searched for such authority to confirm the Maine Department of Corrections has this procedure in place. The Court located State of Maine Department of Corrections Policy Number 10.1, titled Resident Allowable Property (Policy 10.1), "[t]he purpose of [which] is to establish procedures governing the receipt retention, storage, accountability, and disposition of the personal property of residents and to ensure that the personal property of residents is free from contraband." State of Me. Dep't of Corr., Policy No. 10.1, Resident Allowable Prop. (revised Dec. 13, 2023) (Dep't of Corr. Policy 10.1). Policy 10.1 begins "[p]roperty is subject to search at any time for any reason without the consent of the resident," but proceeds to state:

> Although residents are allowed personal property at their own risk, a resident may make a claim for replacement of or reimbursement for any item lost or damaged due to the fault of facility staff . . .. All claims shall be reviewed on a case-by-case basis and all replacement or reimbursement decisions shall be made at the discretion of the Chief Administrative Officer, or designee.

Dep't of Corr. Policy 10.1 at 4-5. Policy 10.1 further provides:

> If any non-allowable or contraband property is found, it shall be accounted for using the Disposition of Property by Facility form and Disposition of Property by Adult Resident form, and the resident property form in CORIS, as applicable. The staff completing the form(s) and the resident shall sign the form(s), and the resident shall be given a copy of the form(s).
>
> If a physical inventory has not been conducted for a reason outlined above within the previous quarterly period, it shall be inventoried using

> the Resident Property Inventory form. If non-allowable or contraband property is found, it shall be accounted for using the Disposition of Property by Facility form and Disposition of Property by Adult Resident form, and the resident property form in CORIS, as applicable. The staff completing the form(s) and the resident shall sign the form(s), and the resident shall be given a copy of the form(s).

*Id.* at 7-8. Finally, Policy 10.1 requires "[a]ny resident property to be stored for any reason shall be placed in secure storage at the facility prior to the end of the shift," accompanied by the relevant paperwork signed by the staff member and the incarcerated individual. *Id.* at 8.

In addition to the Maine Department of Corrections' process for storing and challenging the detention of inmate property, the State has procedures in place to provide inmates with post-deprivation remedies, including a right of appeal of Department of Corrections rulings on prisoner grievances to the state courts and a cause of action for common law conversion under the MTCA. *See Rec. Dec.* at 5 n.2.

After review of the relevant procedure, the Court agrees with the Magistrate Judge's determination that Mr. Moore does not have a plausible procedural due process claim. *See id.* at 5. The Court cannot conclude the State's procedure for handling grievances regarding inmate property is "so open-ended it invites unwarranted uses of summary process." *Zinermon*, 494 U.S. at 138. The Court concludes the State "provides an adequate after-the-fact remedy for any wrongful summary action," *Parratt*, 451 U.S. at 543-44, by offering inmates an administrative pathway to relief through the submission of claims for "replacement or reimbursement for any time lost or damaged due to the fault of facility staff" and the "case-by-case basis" review of such claims by the Chief Administrative Officer, or a

11

designee, *see* Dep't of Corr. Policy 10.1, and, further, the availability of state court review of such administrative determinations as well as a cause of action under the MTCA. *Rec. Dec.* at 5 n.2. Given these avenues for redress, the Court concludes Mr. Moore's "allegations of the kind of 'random and unauthorized' mistakes in application that those who work in government sometimes make are not enough to state a procedural due process claim." *S. Commons Condo. Ass'n*, 775 F.3d at 89.

### 2. Substantive Due Process

The Court also affirms the Magistrate Judge's determination that Mr. Moore does not have a plausible substantive due process argument based on his allegations of property confiscation. Although the Court reads Mr. Moore's complaint liberally, *see Sanchez*, 2024 U.S. App. LEXIS 15530, at *1, it cannot reasonably conclude the Defendants' alleged actions regarding the Plaintiff's property are "extreme and egregious," "truly outrageous, uncivilized, and intolerable," or "stunning." *Pagan*, 448 F.3d at 32; *accord Espinoza*, 558 F.3d at 87.

### C. Other Constitutional Violations

Finally, Mr. Moore's additional allegations, including that an officer made vulgar and offensive comments when the Plaintiff requested an officer of a specific gender perform a visual inspection of his body and that he was assaulted during one incident of property confiscation, do not change the Court's conclusion that Mr. Moore fails to plead a plausible constitutional violation. First, the Court agrees with the Magistrate Judge that "offensive comments and verbal abuse have not been found to rise to the level of a constitutional violation." *Rec. Dec.* at 6 n.3 (citing *Reichert v.*

12

*Abbott*, No. 19-1876, 2020 U.S. App. LEXIS 30354, at *1 (1st Cir. June 8, 2020) ("The complaint failed to state an Eighth Amendment claim because verbal abuse or harassment has not been found to violate the Eighth Amendment") (in turn citing *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) (citation amended)).

    Second, the Court affirms the Magistrate Judge's determination that Mr. Moore's allegation of an assault, including that he was prevented from photographing the resulting injuries and denied his preferred medical care, fails to include "the crucial detail[s] of who, what, when, where, and how" necessary to establish an actionable claim. *Id.* (quoting *Byrne v. Maryland*, No. 1:20-cv-00036-GZS, 2020 U.S. Dist. LEXIS 48676, at *11 (D. Me. Mar. 20, 2020) (citation amended)). Of this incident, Mr. Moore says only, "[t]he assault, threat and destr[uction] of personal property, whom assaulted plaintiff Moore, whom saw the badly bruised black and blued front and backside of the Plaintiff's body, refusal of photographing the body of Plaintiff Moore and NON outside medical treatment. As well as not being allowed to shower or clean up after being maced in the face." *Attach.* at 5. If a pro se plaintiff provides sufficient facts, a court can "intuit the correct cause of action"; however, "pro se status does not insulate a party from complying with procedural and substantive law," and dismissal is appropriate where a plaintiff does not provide "the requisite supporting facts" of a legal claim. *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). Here, the Court agrees with the Magistrate Judge that Mr. Moore fails to clear this hurdle on his assault claim.

Finally, Mr. Moore describes what he classifies as a "hate crime," stating Warden Randall Libby received a call about "what happened to one of the twin boys. One of the twin boys told father and mother I am not a boy, I am a girl (that's called a transgender child). Both Liberty parents murder their own child . . .. Both Randall and Rich arrived at house, looked inside, looked around first to remake it to look like a teenager suicide." *Attach.* at 11. The Plaintiff says further, "I, Nikki Moore, was being seen by C.C.S. Medical Department Physician's Assistant, Rick Liberty, on January 9, 2018 when he told me what happened." *Id.*

The Court struggles to make sense of these unusual factual allegations but concludes Mr. Moore does not have standing to bring this claim for the simple reason that he alleges no injury to himself. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (determining the "irreducible constitutional minimum of standing" that a party invoking federal jurisdiction must establish: (1) an injury in fact that is concrete and particularized, and actual or imminent; (2) a causal connection between the injury and conduct complained of; and (3) a likelihood that the court could redress the injury with a favorable decision). Particularly relevant here, to establish an injury in fact, a plaintiff must show he "sustained or is immediately in danger of sustaining some direct injury as the result of the challenged . . . conduct and [that] the injury or threat of injury [is] both real and immediate." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102-03 (1983). Mr. Moore does not clear this initial hurdle here and, thus, this claim warrants dismissal.[4]

---

[4] There is nothing in Mr. Moore's pleadings which would allow the Court to conclude he has third-party standing to bring this claim. The First Circuit has described third party standing as an

14

## V.   CONCLUSION

Having performed a de novo review pursuant to 28 U.S.C. § 363(b)(1)(B), the Court AFFIRMS the Recommended Decision After Review of Plaintiff's Complaint (ECF No. 15), OVERRULES Plaintiff Walter Moore's Motion of Objection on the Grounds of Failure to Follow S.O.P. by Defendants and MSP (ECF No. 16), and accordingly DISMISSES without prejudice the Plaintiff's Complaint for Violation of Civil Rights (ECF No. 1).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 27th day of May, 2025

---

"isthmian exception" which "permit[s] one to assert another's rights in circumstances where 'some barrier or practical obstacle deters a third party from asserting its rights.'" *Freeman v. Town of Hudson*, 714 F.3d 29, 39 (1st Cir. 2013) (quoting *Wine & Spirits Retailers, Inc. v. Rhode Island*, 418 F.3d 36, 49 (1st Cir. 2005)). However, here, as in *Freeman*, "there is no allegation that the [third party] is incapable of asserting his or her own rights, and therefore we lack jurisdiction over this claim." *Id.*